IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| v. | CRIMINAL ACTION NO. 1:17-CR-151-SCJ-LTW |
| XAVIER JORDAN, | |
| Defendant. | |

**MAGISTRATE JUDGE'S FINAL REPORT AND RECOMMENDATION AND ORDER CERTIFYING THIS CASE READY FOR TRIAL**

Pending before this Court is Defendant Xavier Jordan's Motion Suppress Evidence. (Doc. 12). This Court convened a suppression hearing with respect to Defendant Jordan's Motion on January 16, 2018. (Doc. 40). On March 7, 2018, Defendant Jordan filed his post-hearing brief, and the Government has filed its response. (Docs. 42, 44). This case is now ripe for a ruling. For the reasons set forth below, Defendant's Motion to Suppress should be **DENIED**. (Doc. 12).

**DEFENDANT'S MOTION TO SUPPRESS EVIDENCE**

**I.    FACTUAL BACKGROUND**

On May 2, 2017, the grand jury returned an indictment charging Defendant Xavier Jordan ("Defendant") with one count of knowingly possessing a firearm after having been convicted as a felon in violation of 18 U.S.C. § 922(g)(1) and 924(a)(2); one count

of possession with intent to distribute controlled substances, including marijuana, cocaine, Hydrocodone, Oxycodone, and Alprazolam, in violation of 21 U.S.C. §§ 841(a)(1), (b) and 18 U.S.C. § 2; and one count of using and carrying a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A)(i). (Doc. 1).

### A.   **Investigator Delain Conducts a Traffic Stop of the Jeep**

Around 6:40 p.m. on October 11, 2016, Investigator Leon Delain of the City of Atlanta Police Department was on routine patrol when he conducted a traffic stop of a 2008 white Jeep driven by Defendant. (Tr. of Jan. 16, 2018 Evid. Hrg., hereinafter "Tr." 4-7). Investigator Delain has worked in the Atlanta Police Department since November 2011 and in 2016 at the time of the stop, he was assigned to a Field Investigation Team where he and members of his team targeted high-crime areas and street-level narcotics and investigated suspicious activity. (Tr. 4-6). Just prior to the stop, Investigator Delain was traveling westbound on Joseph E. Boone Boulevard, and Defendant was traveling eastbound in the white Jeep. (Tr. 6). Joseph E. Boone Boulevard had three lanes at that location, two moving in the direction the Jeep was traveling and one moving in the other direction. (Tr. 6-7, 48-49). The road conditions were normal. (Tr. 7).

Although Investigator Delain was driving alone in his patrol car, he was working and communicating with other members of the Field Investigation Team ("FIT team"), including Sergeant Vayens, Officer James Spear, Officer Gregory Lake, and Officer

Gibson.[1] (Tr. 8-9). Seargeant Vayens, who was driving in an unmarked vehicle behind the white Jeep, notified members of the FIT team via radio that he had observed the Jeep swerve and fail to maintain its lane. (Tr. 9-11). At that point, Investigator Delain made a U-turn, caught up to where Sergeant Vayens was driving, and pulled his patrol car in between Sergeant Vayens and the white Jeep and traveled about two to three car lengths behind the white Jeep. (Tr. 10-11). Subsequently, Investigator Delain personally observed the Jeep swerve twice more near the intersection of James P. Browley Drive and Joseph E. Boone Boulevard. (Tr. 11). At that point, Investigator Delain believed that Defendant, who was driving, had committed a traffic violation for failure to maintain his lane because he crossed into another lane of traffic without fully moving over into the lane and then he crossed back over. (Tr. 12). Defendant did not use his turn signal at the time. (Tr. 12, 46). Investigator Delain pulled the car over. (Tr. 13). Thirty seconds after Investigator Delain made the stop, Sergeant Vayens arrived. (Tr. 17). Fit members Spear, Lake and Gibson also joined Investigator Delain at the scene. (Tr. 17).

Investigator Delain approached the vehicle on the driver's side. (Tr. 15, 35). At that time all of the Jeep's windows were up, except the back, driver's-side window, which was partially open. (Tr. 35, 55). Defendant kept his gaze straight ahead during his interaction with Investigator Delain. (Tr. 15-16, 36, 57). After Investigator Delain

---

[1] The Government's witnesses did not identify Sergeant Vayens or Officer Gibson's first names.

3

requested Defendant's driver's license, Defendant reached over his shoulder and handed his license to Investigator Delain through the back, driver's side window, which was opened about a quarter of the way. (Tr. 15, 55). Investigator Delain testified that handing the license through the back window was unusual, but he does not recall asking Defendant why he did not roll down his front window. (Tr. 35).

Investigator Delain advised Defendant that the reason he pulled Defendant over was because Defendant failed to maintain his lane. (Tr. 16). Defendant replied that he was trying to avoid potholes. (Tr. 16). Investigator Delain admits there were potholes covered with large metal plates on Joseph E. Boone Boulevard, and that some drivers would rather change lanes than driver over something. (Tr. 32-34). According to Investigator Delain, under the failure to maintain lane statute, drivers on have to maintain their lane as they are traveling down a city street or state highway to prevent causing an accident or driving off of the road. (Tr. 33). Investigator Delain also states that when drivers need to change lanes, they must do so safely. (Tr. 33).

Investigator Delain used his car computer to determine whether Defendant's license was valid. (Tr. 17-18, 36, 55). Defendant's license and registration were valid and at that point, Investigator Delain could have written the citation and let Defendant go. (Tr. 38).

**B.** **Officer Spear Smells Marijuana Through the Back Window**

While Investigator Delain was running the license check, however, Officer Spear detected the smell of marijuana emanating from the car. (Tr. 19, 37, 57). Officer Spear

4

approached the driver's side door and stayed there for around a minute. (Tr. 19, 37). Defendant continued to stare straight ahead and would not make eye contact. (Tr. 57). Defendant also kept his conversation brief. (Tr. 57). Officer Spear stepped towards the open rear window and observed a faint smell of raw marijuana. (Tr. 57). When Officer Spear leaned in closer, he could smell a stronger odor of raw marijuana. (Tr. 57).

At some point, Officer Spear looked at Investigator Delain and made a face, which Investigator Delain interpreted to mean that Officer Spear smelled something. (Tr. 19, 56-57, 59, 77). Officer Spear usually made a face to signify that he suspected that he was smelling narcotics so as not to alert the driver, who may try to flee. (Tr. 19, 39, 59). In the moments that followed, Officer Spear[2] confirmed to Investigator Delain that he smelled marijuana. (Tr. 40, 59-60). Investigator Delain admits that he did not smell anything during his encounter with Defendant, but testified that he had a head cold at the time and his nose was completely stuffed. (Tr. 19-20, 40). Had Officer Spear not smelled anything, Investigator Delain would have written the citation and let Defendant go. (Tr. 38). Based on Officer Spear's reaction to an odor, Investigator Delain

---

[2] The officers' field unit specialized in narcotics, guns, and fugitives. (Tr. 52). Thus, Officer Spear received training on narcotics and drug-related items as well as how narcotics are packaged and how they are concealed. (Tr. 52, 64). Likewise, at the academy, officers had the opportunity to see and smell narcotics and received training on how to identify drug-related items and narcotics, such as what they smell like. (Tr. 52, 64). Officer Spear had also received training on how to differentiate the smell of marijuana from other drugs as well as how the different grades of marijuana smell. (Tr. 65-66). Officer Spear testified that his fellow officers had nicknamed him K-9 because his sense of smell "is pretty good on narcotics related cases." (Tr. 53). Officer Spear had also participated in one hundred arrests involving marijuana and had come into contact with narcotics on a weekly basis. (Tr. 52, 64).

5

concluded that a crime was occurring or that there was a controlled substance inside the vehicle. (Tr. 20).

### C.  The Officers Search the Jeep

Investigator Delain testified that because the officers wanted to search the vehicle, they had to remove Defendant from it. (Tr. 40 (testifying that because Officer Spear told Investigator Delain what he smelled, the officers had probable cause to search the vehicle, and so they "had to remove Mr. Jordan from the vehicle")). Therefore, Defendant was informed that Mr. Spear smelled marijuana and was asked to step outside his vehicle. (Tr. 20, 41). Defendant moved slowly and opened up the door. (Tr. 21). As Defendant placed his left leg out of the car, he stood straight up and froze for a few seconds. (Tr. 20, 74). Officer Spear became concerned that Defendant might try to get back into the car or resist arrest. (Tr. 61). Defendant's behavior concerned Investigator Delain because he did not know if Defendant would attempt to jump back into the car and flee or otherwise plan an escape route. (Tr. 21). Officer Spear then grabbed Defendant's left arm and began to place it behind Defendant's back as Investigator Delain reached for Defendant's right arm. (Tr. 21, 60). Officer Lake was facing the driver door as the door opened and pulled the door open the rest of the way. (Tr. 22, 61). While Defendant was being removed from the vehicle, Officer Lake saw a gun, said "gun," and then placed his arm in the way of the gun so that Defendant could not get to the gun or back into the vehicle. (Tr. 22, 61, 75, 79). Defendant responded, "what gun" or something similar. (Tr. 61). Investigator Delain became concerned that

6

Defendant would try to get the firearm, and detained Defendant. (Tr. 22). Officer Lake recovered the firearm from under the seat. (Tr. 22). After the firearm was secured, Officers Gibson and Vayens went into the vehicle to further investigate the odor of raw marijuana and searched the car. (Tr. 23). Officer Spear also assisted with the search. (Tr. 62). The officers found 44.86 grams of marijuana packaged within small individual baggies,[3] a fake soda can containing twenty-four individual hits of crack cocaine, and some pill bottles. (Tr. 23-24, 42).

The officers also performed a criminal history check on Defendant and learned that he was a convicted felon. (Tr. 24). Defendant was formally placed under arrest. (Tr. 24). Investigator Delain issued Defendant a citation for failure to maintain his lane, for having no tail lights, and possession of a firearm by a convicted felon. (Tr. 28, Gov't's Ex. 2). Although Defendant should have used his turn signal when he was crossing into another lane, Inspector Delain did not include a violation for Defendant's failure to use a turn signal. (Tr. 47). Although Investigator Delain cited Defendant for not having tail lights, Investigator Delain admits that only Defendant's right brake light was out. (Tr. 29-30). Because the officers arrested Defendant, he was no longer permitted to drive the Jeep. (Tr. 25). The officers conducted an inventory search of the vehicle and then impounded it. (Tr. 25).

---

[3] Based on Officer Spear's training, the odor of marijuana may emit through bags and it only takes a very small amount of marijuana for a person to smell it. (Tr. 58). Additionally, according to Officer Spear, the smell of marijuana can seep into clothing and the fabric inside vehicles. (Tr. 58-59)

7

## II.  LEGAL ANALYSIS

Defendant contends that evidence obtained as a result of the October 11, 2016 traffic stop should be suppressed because there was no reasonable suspicion or probable cause to justify the stop and search of his Jeep.  In support, Defendant argues Investigator Delain did not have probable cause to stop him for failure to maintain lane because under O.C.G.A. § 40-8-23, a driver does not fail to maintain his lane unless the movement to change lanes is not safe and Defendant's movement was not unsafe. Defendant also points out that even if his right brake light was not functioning, the malfunction of his right brake light did not justify the stop because the Government failed to offer credible evidence that the brake light was out and because Investigator Delain did not learn that the brake light was out until after he made the stop.  Defendant further contends that the officers lacked probable cause to search his Jeep because Spear's testimony that he smelled raw marijuana was not credible.

### A.  The Traffic Stop Was Justified by Probable Cause

Defendant argues Investigator Delain did not have probable cause to stop him for failure to maintain lane because under O.C.G.A. § 40-8-23, a driver does not fail to maintain his lane unless the movement to change lanes is not safe and his movement was not unsafe.  Defendant also points out that even if his right brake light was not functioning, the malfunction was not a basis for the stop because Delain did not learn that the brake light was out until after he made the stop and because the Government failed to offer credible evidence that the brake light was out.  Conversely, Government

8

argues in response that Investigator Delain had probable cause that Defendant failed to maintain his lane because he was swerving in and out of his lane multiple times without using his turn signal.

The Fourth Amendment provides that "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no warrants shall issue, but upon probable cause, supported by oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. amend. IV. "Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period and for a limited purpose, constitutes a 'seizure' of 'persons' within the meaning of this provision . . . ." Whren v. United States, 517 U.S. 806, 809 (1996). Therefore, the Fourth Amendment protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrests. Floyd v. City of Miami Beach, No. 17-12741, 2018 WL 1804663, at *3 (11th Cir. Apr. 17, 2018). "Thus, a traffic stop is constitutional if the officers have probable cause to believe that a traffic violation has occurred or reasonable suspicion that criminal activity is afoot." Floyd, 2018 WL 1804663, at *3 (citing United States v. Harris, 526 F.3d 1334, 1337 (11th Cir. 2008)); United States v. Strickland, 902 F.2d 937, 940-41 (11th Cir. 1990).

Law enforcement officers have probable cause when the facts and circumstances within their collective knowledge, "or of which they have reasonably trustworthy information, would cause a prudent person to believe that the suspect has committed or

9

is committing an offense." Craig v. Singletary, 127 F.3d 1030, 1042 (11th Cir. 1997). "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment," and "probable cause itself is a doctrine of reasonable probability and not certainty," Craig, 127 F.3d at 1042, citing United States v. Magluta, 44 F.3d 1530, 1535 (11th Cir. 1995); Ortega v. Christian, 85 F.3d 1521, 1524 (11th Cir. 1996) ("Probable cause does not require overwhelmingly convincing evidence, but only 'reasonably trustworthy information'"). It "must be judged not with clinical detachment, but with a common sense view to the realities of normal life." Craig, 127 F.3d at 1042.

Here, the Government argues the officers had probable cause to conduct a traffic stop for Defendant's failure to maintain his lane because they observed him swerving in and out of his lane along a major street without using any turn signals. Defendant responds that a driver is not "per se guilty" of failure to maintain his lane if he leaves his lane because the statute allows for transfers between lanes as long as the driver moves between the lanes "with safety." Defendant argues there was no evidence presented tending to show that he was not safely changing lanes and points out that he was not legally required to drive over potholes covered with metal plates.

Pursuant to O.C.G.A. § 40-6-48(1), it is a traffic violation to fail to maintain one's lane. O.C.G.A. § 40-6-48(1) provides:

> Whenever any roadway has been divided into two or more clearly marked lanes for traffic, the following rules . . . shall apply:
>
> (1)   A vehicle shall be driven as nearly as practicable entirely within a single lane and shall not be moved from such lane until the driver has first ascertained that such movement can be made with safety; . . .

10

O.C.G.A. § 40-6-48(1). Under Georgia case law, courts have found repeatedly that weaving[4] without reason into nearby lanes violates O.C.G.A. § 40-6-48(1) and justifies a traffic stop. Acree v. State, 319 Ga. App. 854, 855 (2013) (holding that traffic stop for failure to maintain lane justified where driver touched the centerline, drifted back, and then touched the right fog line); Steinberg v. State, 286 Ga. App. 417, 419 (2007) (concluding that where driver crossed the center line of the roadway, stop pursuant to O.C.G.A. § 40-6-48(1) was justified); Rayo-Leon v. State, 281 Ga. App. 74, 75 (2006) (finding that stop for violation of O.C.G.A. § 40-6-48(1) was justified where van failed to maintain its lane by twice crossing the white traffic lines, drifting left across the dash lines and then back into van's original lane without signaling or changing lanes); see also United States v. Corley, 408 F. App'x 245, 245-46 (11th Cir. 2011) (concluding that magistrate correctly determined that there was probable cause for stop where deputies credibly testified that lane violation had occurred when defendant's vehicle was driving more slowly than other vehicles on the interstate and for no apparent reason

---

[4] Defendant argues Detective Delain testified that he was swerving, not weaving, and thus, categorizing his driving as weaving overstates his driving behavior. Defendant also argues, without support for, that weaving implies uncontrolled movement in or between lanes where as swerving implies deliberate behavior and generally occurs to avoid something. The Court has not located any authority for the proposition that there is a significant difference between swerving and weaving for purposes of analyzing O.C.G.A. § 40-6-48(1). Weaving has been defined as "to direct . . . in a winding or zigzag course, especially to avoid obstacles." Merriam-Webster, https://www.merriam-webster.com/dictionary/weaving (last visited June 15, 2018). Thus, the driving behavior described in this case as swerving into the nearby lane on multiple occasions is consistent with the definition of weaving even if Defendant was swerving in order to avoid potholes.

11

veered out of and back into its lane); United States v. Robinson, 272 F. App'x 774, 778 (11th Cir. 2008) (concluding that weaving between lanes gave officer probable cause to believe that O.C.G.A. § 40-6-48(1) had been violated); United States v. Son, No. 1:12-CR-00042-ODE-JFK-1, 2012 WL 4711974, at *7 (N.D. Ga. Aug. 15, 2012) (explaining that Georgia State Patrol trooper had probable cause to stop car for violation of O.C.G.A. § 40-6-48(1) where he observed vehicle weave over the solid yellow line twice), R&R rejected on other grounds by 2012 WL 4711978 (N.D. Ga. Oct. 2, 2012).

Defendant insists that his driving behavior did not violate O.C.G.A. § 40-6-48(1) because the Government has not shown that he failed to ascertain whether he could move into the other lane with safety. The Government, however, is not required to show that a driver failed to ascertain whether movement out of his lane could be safely made for purposes of establishing probable cause for a violation of the statute. United States v. Corley, No. 4:08-CR-052-HLM, 2009 WL 10670263, at *4 n.8 (N.D. Ga. Apr. 8, 2009); United States v. Richardson, No. 108-151, 2009 WL 668706, at *2 (S.D. Ga. Mar. 12, 2009) (finding that probable cause for traffic stop existed for violation of O.C.G.A. § 40-6-48(1) occurred where defendant hit the ruts in emergency lane even though no other cars were near vehicle at the time and "rode the white line"); Steinberg, 286 Ga. App. at 419; Allenbrand v. State, 217 Ga. App. 609, 610 (1995) (concluding that officer had probable cause to stop vehicle where vehicle veered into another lane of traffic even though the driver explained at trial that he was weaving because the tires and steering were defective, officer agreed at trial that driver did not pose danger to

12

other traffic, and driver was ultimately acquitted on failure to maintain lane charge, because officer's opinion at trial and vehicle defects were of no consequence in determining whether officer had probable cause to stop the vehicle).

Here, Investigator Delain had probable cause to believe that Defendant had failed to maintain his lane because, based on the facts available to Investigator Delain, Defendant veered without reason into a nearby lane of traffic. Investigator Delain observed the Jeep cross into another lane without fully entering the lane and then crossed back over without using a turn signal. (Tr. 12, 46). Additionally, although Defendant testified that he was attempting to avoid potholes, as Investigator Delain was observing the Jeep, he did not know why the Jeep was swerving.[5] (Tr. 12, 46). Investigator Delain testified that while there was construction farther up the road, the general conditions of the road that day were normal. (Tr. 7). Thus, based on Investigator Delain's observation, the Jeep was swerving into a nearby lane without reason. That there may ultimately have been a reason that Investigator Delain was unaware of at the time, such as avoidance of a pothole, does not figure into the

---

[5] Although Investigator Delain admits that the roadway did have potholes in some locations, Investigator Delain credibly testified that he did not know why Defendant was swerving and that the conditions of the roadway were normal. (Tr. 7). Investigator Delain's opinion was that because there were metal plates covering the potholes, drivers could simply drive over them, but admits that some drivers would want to avoid potholes. (Tr. 32-33). Since Investigator Delain was passing over the same roadway as Defendant only moments after Defendant had driven there and testified that the conditions of the roadway were normal, this Court reasonably infers, based on Investigator Delain's credible testimony, that Investigator Delain did not notice evidence of potholes which would motivate drivers to leave their lanes at the time Defendant was swerving in and out of his lane.

13

calculation of whether there was probable cause to make the stop. Investigator Delain did not have to know to a legal certainty that Defendant had violated O.C.G.A. § 40-6-48(1) at the time he made the stop in order to possess probable cause. Craig v. Singletary, 127 F.3d 1030, 1042 (11th Cir. 1997) (explaining that "sufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment," and "probable cause itself is a doctrine of reasonable probability and not certainty"). Because Georgia courts have consistently found that veering into another lane without a reason has been found to be sufficient probable cause to believe that a driver had failed to maintain his lane, this Court finds that Investigator Delain had probable cause to make the traffic stop for failure to maintain lane.[6] Rayo-Leon, 281 Ga. App. at 75; Acree, 319 Ga. App. at 855; Steinberg, 286 Ga. App. at 419; see also Corley, 408 F. App'x at 245-46; Robinson, 272 F. App'x at 778; Son, 2012 WL 4711974, at *7.

## B. The Search of the Jeep Was Justified By Reasonable Suspicion of Illegal Drug Activity

Defendant further contends that the law enforcement officers lacked probable cause to search his Jeep. Defendant acknowledges that probable cause may arise when an officer smells marijuana, but argues that the officers did not have probable cause in this case because Officer Spear's testimony that he smelled marijuana was not credible. In support, Defendant contends that Officer Spear did not likely smell marijuana because

---

[6] Because this Court finds that Investigator Delain had probable cause to conclude that Defendant had failed to maintain his lane, the Court does not address Defendant's arguments that the non-functioning brake light did not supply probable cause for the stop.

14

Investigator Delain did not smell marijuana, the only window down was on the driver's side of the car and was only one third of the way opened, and the marijuana was packaged in individual baggies, which were packaged in a larger bag on the passenger side of the backseat.  Defendant further argues Spear's experience arresting individuals in connection with their possession and/or use of marijuana and training does not make his testimony convincing because Spear was unaware how marijuana smelled when compared to non-narcotics substances and did not compare what he smelled on October 11, 2016, as compared to what he smelled on those prior arrests.  Additionally, Defendant contends that Investigator Delain's testimony that he had a head cold during the traffic stop was not credible because his explanation as to how he came down with a head cold was not credible and was contradicted by Spear's testimony that Delain was not impaired.

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches."  U.S. Const. amend. IV.  "It is well settled under the Fourth and Fourteenth Amendments that a search conducted without a warrant issued upon probable cause is 'per se unreasonable . . . subject only to a few specifically established and well-delineated exceptions.'" Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973).  The automobile exception applies under the circumstances of this case.  Under the automobile exception, police officers may conduct a warrantless search of a vehicle if the vehicle is readily mobile and there is a fair probability that contraband or evidence of a crime will be found in the

15

vehicle.  United States v. Carter, 481 F. App'x 475, 477 (11th Cir. 2012); United States v. Watts, 329 F.3d 1282, 1286 (11th Cir. 2003).  Here, as Defendant concedes, the Jeep was mobile because he had just been driving it prior to his arrest. (Def.'s Br. 14; Tr. 9-13).   Additionally, their appears to be a fair probability that evidence of a crime would be found inside the Jeep.  In this Court's view, Officer Spear credibly testified that he smelled marijuana when he stood outside the back window of the car.  (Tr. 55, 57-58). While Defendant's argument that the marijuana's placement inside of baggies which were located inside another bag gives the Court pause, not only did Officer Spear's testimony appear truthful to the undersigned, he testified as to several facts which make it appear that Officer Spear could smell marijuana under the circumstances of this case. Officer Spear credibly testified  that he has a strong sense of smell, that based on his training, it only takes a small amount of raw marijuana for a person to detect the odor of marijuana, that the marijuana smell can be emitted through packages and bags, that he is able to smell marijuana through a ziploc bag, that the smell can seep onto fabric inside of vehicles, and that marijuana can be smelled from further distances.  (Tr. 53, 58, 65). Additionally, this Court is not convinced that the marijuana odor had to have come from the inside of the baggies containing marijuana. Based on Officer Spear's testimony that it only takes a small amount of raw marijuana for a person to detect the odor of marijuana, and that the odor of marijuana can seep onto clothing and fabrics; thus, the smell of marijuana could have emanated from any number of places inside the Jeep, such as Defendant's clothing, the cloth interior of the Jeep, or the bag holding the baggies of

16

marijuana. (Tr. 43, 58-59).

Although Defendant suggests that Officer Spear did not smell the marijuana because he only spent less than a minute by his vehicle, the back driver's side window was only a third of the way down, and the bag containing the baggies of marijuana was on the opposite side of the seat, the Court concludes that it may have only taken Officer Spear mere moments to smell an odor emanating from the car. Officer Spear, however, was standing within inches of the window for at least forty-five seconds. (Tr. 63-64). Additionally, even at a third of the way open, the window should have been open enough for Officer Spear to smell inside because Officer Spear was standing only inches away from the open window. (Tr. 57, 63). Moreover, Officer Spear leaned closer to the window. (Id.). Furthermore, even assuming that the smell of marijuana was emanating from the bag on the other side of the back seat, Officer Spear credibly testified that marijuana can be smelled from further distances. (Tr. 65).

This Court is also unpersuaded by Defendant's argument that Officer Spear's training as to the smell of marijuana should be discounted "because Spear[] was unaware of how marijuana smelled as compared to non-narcotics substances" and did not testify as to "what he smelled on October 11, 2016, compared to what he had smelled" during prior arrests. Officer Spear credibly testified that he received training on how to detect the smell of marijuana, that he received training on how to differentiate the smell of marijuana from other substances, that his training specifically focused on what marijuana smells like, that marijuana has a very distinct smell and is not mistakable with

17

AO 72A
(Rev.8/82)

any other plant, and that he made hundreds of arrests involving marijuana. (Tr. 52, 64-66). Thus, this Court finds, based on Officer Spear's testimony, that he is familiar enough with the distinct smell of marijuana that his belief that he was smelling marijuana supplied probable cause that there would be marijuana in the Jeep.

Defendant challenges the credibility of Officer Spear's testimony on the grounds that Investigator Delain was the officer who primarily interacted with him but did not smell marijuana. The undersigned observed the demeanor of Investigator Delain when he testified that he his nose was "stopped up" due to a head cold and found him credible. (Tr. 19-20, 39-40). Defendant maintains that Investigator Delain's testimony was not credible because Officer Spears was questioned about whether Investigator Delain was "impaired in any way," but did not mention that Investigator Delain had a cold. (Tr. 63-64). The Court does not find Officer Spear's testimony particularly probative of the notion that Investigator Delain did not have a cold because the line of questioning would not have necessarily triggered a response that Investigator Delain had a cold. Officer Spear was asked on cross-examination if there was "anything out of normal" with Investigator Delain. (Tr. 63). Officer Spear responded "what do you mean by that?" (Tr. 63). Defense counsel clarified, "In terms of his mannerisms, behavior, was he the way you know him to be?" (Tr. 63). Officer Spear responded, "Yes." (Tr. 63). The question that followed was whether Officer Spear noticed "anything with Officer Delain being impaired in any way." (Tr. 63). Officer Spear responded, "No." (Tr. 63). In this Court's view, the line of questioning was more likely to evoke a response as to whether

18

Investigator Delain was acting unusual that day or whether he was under the influence of alcohol, medications, or the like, and not whether Investigator Delain was suffering from a cold.

Additionally, Defendant's behavior during the stop contributed to a finding that there was probable cause to search the interior of the vehicle because he appeared to avoid interaction with the law enforcement officers. As discussed above, the only lowered window was the one behind Defendant on the driver's side and not the window nearest in proximity to the conversation between him and Investigator Delain. (Tr. 15, 56). Both Investigator Delain and Officer Spear reasonably thought Defendant's behavior was unusual. (Tr. 15, 35, 55-56). Both Investigator Delain and Officer Spear also credibly testified that Defendant kept his end of the conversation with them to a minimum and kept his gaze straight ahead during their conversation. (Tr. 15, 35-36, 55-57). Because Defendant's behaviors appeared to be avoiding police interaction during the stop and because Officer Spear credibly testified that he smelled marijuana while standing outside the back window of the Jeep, this Court concludes that there was probable cause that marijuana would be found inside the vehicle. See, e.g., United States v. Williams, No. 17-11843, 2018 WL 1877507, at *4 (11th Cir. Apr. 19, 2018) ("In a long line of cases, we have held that the smell of marijuana coming from a person's house or vehicle establishes probable cause for a search."); United States v. Ward, 722 F. App'x 953, 962 (11th Cir. 2018) ("It is also well established that if a police officer detects the odor of marijuana [emanating from a vehicle], this gives rise to

probable cause."); <u>United States v. Tobin</u>, 923 F.2d 1506, 1512 (11th Cir. 1991). Accordingly, the automobile exception applies and the search of Defendant's jeep was lawful.[7]  Therefore, Defendant's Motion to Suppress Evidence should be **DENIED**. (Doc. 12).

## CONCLUSION

Based on the foregoing, Defendant's Motion to Suppress Evidence should be **DENIED**. (Doc. 12).  As there are no further motions pending, the undersigned certifies this case ready for trial.  The Clerk is directed to terminate the reference to the undersigned.

**SO ORDERED, REPORTED AND RECOMMENDED** this  19  day of June, 2018.

s/LINDA T. WALKER
LINDA T. WALKER
UNITED STATES MAGISTRATE JUDGE

---

[7] Because the automobile exception applies, there is no need to reach the question of whether the evidence obtained during the search of the Jeep would have been inevitably discovered during an inventory search. <u>United States v. Gooden</u>, 148 F. App'x 846, 848 n.2 (11th Cir. 2005).